DAVID R. ONGARO, CA SBN. 154698
dongaro@ongaropc.com
EUGENE B. FRID, CA SBN. 321265
efrid@ongaropc.com
**ONGARO PC**
1604 Union Street
San Francisco, CA 94123
Telephone: (415) 433-3900
Facsimile: (415) 433-3950

ALEX G. TOVARIAN, CA SBN 264547
alex@tovarianlaw.com
**LAW OFFICE OF ALEX TOVARIAN**
850 Montgomery Street, Suite 300
San Francisco, CA 94133
Telephone: (415) 984-9990
Facsimile: (415) 520-5830

*Attorneys for Plaintiff Aram Sargsyan*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(EASTERN DIVISION)

ARAM SARGSYAN, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

EMPIRE TWIN PALMS, LLC; A1, A CA COMMERCIAL CANNABIS ASSOCIATION, INC.,

Defendants.

No.

CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT, 47 USC § 227(b)

**Jury Trial Demanded**

ARAM SARGSYAN ("Plaintiff" or "Mr. Sargsyan"), on behalf of himself individually, and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against Defendants EMPIRE TWIN PALMS, LLC. and A1, A CA COMMERCIAL CANNABIS ASSOCIATION, INC., (Collectively, "Defendants" and each a "Defendant"), alleges the following based upon personal knowledge

as to himself and his own action, and as to all other matters, respectfully alleges, upon information and belief and investigation of his counsel, as follows:

**I. INTRODUCTION**

1. This case involves violations by Defendants EMPIRE TWIN PALMS, LLC. and A1, A CA COMMERCIAL CANNABIS ASSOCIATION, INC. of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, which was passed by Congress to regulate the use of automatic telephone dialing systems ("ATDS") to make "robocalls" to Americans.

2. Defendants are retail cannabis stores with at least one location in Riverside County, California. Defendants engage in the for-profit sale of cannabis and hemp products.

3. In violation of the TCPA, Defendants used an ATDS without Plaintiff's "prior express written consent," as required by the TCPA, to send unwanted, unsolicited and unauthorized text messages advertising cannabis retailers.

4. These unwanted, unsolicited, and unauthorized text messages advertising cannabis retailers were made in an effort to solicit and generate business and increase profits for Defendants.

5. The TCPA was enacted to protect consumers from unauthorized and repeated advertisement solicitations by text message exactly like those alleged in this Complaint: automated solicitations made using an ATDS, spam text message advertisements. The TCPA specifically prohibits unsolicited voice calls and text messages to cell phones.

6. Defendants' violations of the TCPA caused Plaintiff, and members of the putative Class of consumers (defined below) to experience actual harm, including aggravation, nuisance, invasion of privacy, and exposure to advertisements of a drug, all of which necessarily accompany the receipt of unsolicited and harassing telemarketing texts.

7. In response to Defendants' unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring Defendants to cease all unlawful text messages and

an award of statutory damages to class members, together with costs and reasonable attorney's fees.

**II. JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9. This Court has personal jurisdiction over Defendants because the conduct at issue in this case occurred within this District.

10. Venue is proper because all or a substantial portion of the events complained of, and the harm alleged, occurred in this District.

**III. PARTIES**

11. Plaintiff, ARAM SARGSYAN, is, and at all times mentioned herein was, an individual citizen of the State of California. At all times relevant to this Complaint, Plaintiff, ARAM SARGSYAN, was a "person" as defined by the TCPA.

12. Defendant, EMPIRE TWIN PALMS, LLC ("ETP") is a California Limited Liability Company operating and doing business as Empire Twin Palms with its principal place of business located in California. In particular, ETP is a cannabis dispensary located at 9806 Mission Boulevard, Jurupa Valley, CA 92509 (Riverside County). ETP is a "person" as defined in 227 U.S.C. § 153.

13. Defendant, A1, A CA COMMERCIAL CANNABIS ASSOCIATION, INC. ("CCA") is a California Corporation operating and doing business within the state of California with its principal place of business located in California. In particular, CCA's business address is 9806 Mission Boulevard, Jurupa Valley, CA 92509 (Riverside County). On information and belief, CCA manages, owns, operates and/or controls ETP. CCA is a "person" as defined in 227 U.S.C. § 153.

**IV. AN OVERVIEW OF TEXT MESSAGING AND THE TCPA**

14. In recent years, companies have turned to "short message services" or "SMS"

messages to reach potential customers. SMS messages involve a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters. SMS messages are commonly referred to as "text messages."

15. SMS or text messages is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message is successfully made, the recipient's cell phone emits an alert that a text call is being received.

16. It is widely believed that the rate at which SMS messages are opened by the recipient exceeds 99 percent, and 90 percent of those messages are read within three minutes. By contrast, the "open rate" for email solicitations is generally approximately 20 percent, depending on the industry. Marketing calls are answered at a far lower rate, particularly in the age of caller ID warning users that the caller is unknown.

17. Unlike conventional advertisements, text messages directed to user's cellular phones can cost the recipient money, because cell phone users frequently pay their service providers either for each text message they receive, or incur a usage allocation and deduction to their text plan, regardless of whether or not the message is authorized.

18. Most commercial text messages are sent from "short codes" or "short numbers," which are special cellular phone numbers, typically five or six digits, that can be used to address text messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers for matters such as television program voting or making charitable donations.

19. When a commercial short code is sent to consumers, the short code, particularly combined with the content of the text message, conclusively reveals the originator of the SMS message.

20. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. The Federal Communication

Commission ("FCC") is the agency Congress vested with authority to issue regulations implementing the TCPA.

21. The TCPA regulates, among other things, the use of "autodialers" or "automated telephone dialing systems" ("ATDSs").

22. As the FCC has explained, Congress prohibited ATDSs because it considered autodialed calls to be costly, inconvenient, and a greater nuisance and invasion of privacy than live solicitation calls.

23. The plain language of section 227(b)(1)(A)(iii) prohibits the use of ATDSs to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

24. Text messages are "calls within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

25. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *FCC Declaratory Ruling*, 23 FCC Rc at 565 (¶10).

26. The FCC specifically ruled that a consumer's prior express written consent to receive further text messages may be revoked and texts sent after revocation violate the TCPA. *In re SoundBite Communication, Inc.*, No. 02-278, 2012 WL 5986338 (2012).

27. A company sending text messages without the consent of the recipient is liable under the TCPA even if the phone number previously belonged to a user who consented to receive calls and has been subsequently reassigned to a customer who has not provided consent. *N.L. v. Credit One Bank, N.A,*960 F.3d 1164 (9th Cir. June 3, 2020).

**V. FACTUAL ALLEGATIONS**

28. Plaintiff is a young professional who works as a surgical technologist at a Hospital in Los Angeles, California.

29. Plaintiff has had his cellular phone number ending in 2824 from on or about

March 1, 2020. In March 2020, Plaintiff had to purchase a new cellular phone number because he was receiving numerous unwanted and unauthorized text messages from other companies promoting their businesses while he was at work.

30. The telephone number ending in 2824 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

31. On July 11, 2020, Plaintiff went to the Empire Twin Palms dispensary located at 9806 Mission Blvd, Jurupa Valley, California (Riverside County). Plaintiff made a product purchase at the dispensary.

32. Shortly thereafter, Defendants started sending telemarketing text messages to Plaintiff's cellular telephone number ending in 2824. These text messages encouraged Plaintiff to use and purchase Defendants' products.

33. Defendants' text messages were transmitted to Plaintiff's cellular telephone number, and within the time frame relevant to this action.

34. Defendants' text messages constitute telemarketing because they encourage the future purchase or investment in property, goods, or services, *i.e.*, selling Plaintiff cannabis products.

35. The information contained in the text messages advertised various promotions and discounts, which Defendants sent to promote their business.

36. The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(b)(1)(A)(iii).

37. Upon information and belief, and based upon the content and volume of text messages, the text messages sent to the phone number ending in 2824 from several different numbers were sent using an ATDS as defined of 47 U.S.C. § 227(b)(1)(A)(iii).

38. Defendants caused the text messages from different numbers to be sent to the phone number ending in 2824, either by directly sending them, or by causing a third party to

send them.

39. Plaintiff has not provided "prior express consent," as used in the TCPA, to receive any telephonic or text message communication from Defendants.

40. Plaintiff suffered concrete harm when he received unwanted and unsolicited marketing text messages from Defendants, including in the form of lost time spent reviewing the text messages while at work.

41. The text messages described herein were not made "for emergency purposes" as described in 47 U.S.C § 227(b)(1)(A).

## VI. CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of himself and all other persons similarly situated.

43. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> "All persons in the United States who (1) received a text message to their cellular phone number from Defendants, (2) within four years prior to the filing of this action, (3) which text message was sent without the recipient's prior express consent, and (4) which text message(s) (a) advertised Defendants or (b) encouraged the recipient to make a purchase from Defendants."

44. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent companies have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and timely file a request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff reserves the right to amend the class definition based upon facts learned in discovery.

45. Members of the Class received promotional text messages from Defendants,

which text messages had the intended purpose of advertising Defendants and encouraging recipients to patronize Defendants without prior express consent to receive such text messages.

46. **Numerosity**. On information and belief, there are thousands of members of the Class such that joinder of all members is impracticable.

47. **Commonality and Predominance**. There are well defined, nearly identical, questions of law or fact common to all members of the Class, which common issues predominate over any issues involving only individual class members. Factual and/or legal common questions include, but are not limited to, the following:

a. Whether the text messages sent to Plaintiff and members of the Class were made by Defendants;

b. Whether the text messages sent to Plaintiff and members of the Class by Defendants are governed by the TCPA;

c. Whether the text messages sent to Plaintiff and members of the Class by Defendants were advertisements and/or made for telemarketing purposes;

d. Whether Defendants had prior express consent from Plaintiff or any member of the Class to receive such text messages;

e. Whether Defendants' conduct violated the TCPA; and

f. Whether sending text messages to Plaintiff and members of the Class was knowing and/or willful, giving rise to treble damages.

48. **Typicality**. Plaintiff's claims are typical of the Class who, like Plaintiff, received unsolicited text message advertisements for Empire Cannabis from Defendants.

49. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff's counsel is committed to vigorously

prosecuting this action on behalf of members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class.

50. **Superiority**. Certification pursuant to Federal Rule of Civil Procedure 23(b)(3) is appropriate because class adjudication is superior to other available methods for fairly and efficiently adjudicating this controversy. Specifically, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. Moreover, given the relatively small individual relief, class treatment is essential to compel Defendants to comply with the TCPA. A class action provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

51. **Conduct generally applicable to the Class.** Certification of the Class under Federal Rule of Civil Procedure 23(b)(2) is also appropriate in that Defendants have acted on grounds generally appliable to each member of the Class, thereby making relief appropriate with respect to the Class as a whole.

52. Plaintiff requests that the Class be certified as a hybrid class under Rule 23(b)(3) for monetary damages and injunctive relief pursuant to Rule 23(b)(2).

**FIRST CAUSE OF ACTION**

Negligent Violation of §227(b) of the TCPA

(Plaintiff Individually and On Behalf of the Class Against All Defendants)

53. Plaintiff repeats and realleges paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54. Defendants and/or their agents sent unwanted solicitation text messages to cellular phone numbers belonging to Plaintiff and other members of the Class using an ATDS.

55. These solicitation text messages were sent *en masse* without the consent of

either Plaintiff or members of the Class to receive such solicitation text messages.

56. Defendants' conduct was negligent.

57. Defendants' conduct violates the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

58. As a result of Defendants' conduct, Plaintiff and other members of the Class are entitled to $500 for every text message.

59. WHEREFORE, Plaintiff requests that the court enter judgment in his favor and in favor of the Class, and against Defendants for:

a. An order certifying the case to proceed as a class action;

b. Statutory damages of $500 per negligent violation of the TCPA;

c. An injunction requiring Defendants to cease all communications in violation of the TCPA;

d. Reasonable attorneys' fees and costs; and

e. Such further relief as this Court may deem just and appropriate.

**SECOND CAUSE OF ACTION**
Willful Violation of §227(b) of the TCPA
(Plaintiff Individually and On Behalf of the Class Against All Defendants)

60. Plaintiff repeats and realleges paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61. Defendants and/or their agents sent unwanted solicitation text messages to cellular phone numbers belonging to Plaintiff and other members of the Class using an ATDS.

62. These solicitation text messages were sent *en masse* without the consent of either Plaintiff or members of the Class to receive such solicitation text messages.

63. Defendants' conduct was willful.

64. Defendants' conduct violates the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

65. As a result of Defendants' willful conduct, Plaintiff and other members of the Class are entitled to up to $1,500 for every text message.

66. WHEREFORE, Plaintiff requests that the court enter judgment in his favor and in favor of the Class, and against Defendants for:

a. An order certifying the case to proceed as a class action;

b. Statutory damages of $1,500 per willful violation of the TCPA;

c. An injunction requiring Defendants to cease all communications in violation of the TCPA;

d. Reasonable attorneys' fees and costs; and

e. Such further relief as this Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this matter for all claims so triable.

DATED: January 22, 2021

**ONGARO PC**

BY: ______________________

David R. Ongaro
Eugene B. Frid
*Attorneys for Plaintiff*

DATED: January 22, 2021

**LAW OFFICE OF ALEX TOVARIAN**

*BY:* ______________________

Alex Tovarian
*Attorneys for Plaintiff*